May it please the court, I'm William McNeil. I'm here on behalf of Keolis, Grimes, and Johnson. This case is the appeal from the 12 v. 6 decision dismissing two claims. One, the Section 301 claim, the Section 401 claim. I'd like to address the 301 claim initially. In that situation, I think the judge was just wrong. In terms of her decision, it's been the law since the Smith case that an individual can sue if it's for her employer. I mean, it's like your bargaining agreement. I think they started this trend. The theory was that a breach of the duty of fair representation was registered in the 301 claim. No. Brought against both the employer and the union. That's not the Smith case. That's not the basis of the 301 claim. That's what I understood it to be though. No, no. A breach of the duty of fair rep. No, because we did not bring a duty of fair representation case in the Smith case. The 301 case is against the employer itself. That's why I started off my trial. There was no claim against the union. There was no claim against the union made because, and if I can go through, Smith started it in 1962. The next part of that chronology, if you will, went to, with regard to this case, Republican Steel v. Maddox. In that matter, the situation was presented that the plaintiff attempted to sue the employer under the collective bargaining agreement as we can hear. But the court dealt with the situation where that particular plaintiff did not attempt to go through the collective bargaining agreement procedure. And indeed, as the court would look at the determination from the indication in the record that those bargaining procedures were exhausted, I was looking in vain for any evidence that the plaintiff falsely stood out. It was not exhausted, and our position is that one does not have to exhaust if one has to run out. And indeed, that's what the court said in Republican Steel v. Maddox. But I couldn't see where it went beyond Step 1 or maybe Step 2. And as I understand the process, Step 1 is filing the grievance, and Step 2 is some communication between the union and the employer, and Step 3 is a face-to-face meeting with the business group and the employers around them, the employees, and is that correct? Essentially, that's correct. Is there any evidence in the record as to whether Step 3 occurred? There's no evidence in the record because we never determined that. What happened in this matter was Ms. Johnson and Mr. Primes worked at this particular institution for approximately four and a half to four years. In January, the institution from which they worked ended up being taken over by the defendant in this case. And in January 2012, they were called in and told that they were no longer able to Allegedly, they didn't pass the background check, so they were terminated. Is that the reason given? That was the reason given initially. If you look at the excerpt from the record, when Ms. Johnson and ultimately Mr. Primes asked for their personnel record, what they got back was a letter saying, We made a mistake, and this was like three and five months later. We made a mistake. You were not terminated. You were laid off, and you could come back. Now, can I go back to that? But at that point, the company was given more notices to continue to employ the company after January. They were actually laying substantial numbers of employees. That's what we sort of understand. The company almost lost the contract. They lost the contract, but it was over an extended period of time where people were laid off, as far as we can determine. I think we're sort of dancing around what I think is the heart of the case here, which is whether or not the termination or layoff, whatever you want to call it, that occurred in January meant that your employees, your clients, never went back to work for Keola's, and the layoffs that I was just speaking about occurred in May. So why would they be entitled to notices underwater, and why would they use the employer's obligation to do anything with regard to people that they weren't in company with in January? Well, certainly there's any case law on this that we can find. The issue being that if they were not terminated for cause, and the statute says that that is an exception. In other words, if you were terminated for cause, then you have no warrant claim. It's in between an employee and a client. I'm trying to get there here. If somebody is not working for the company and is still an employee, is it the virtue of something that happened in May that you claim has retroactive effect to January? Isn't that your argument? The test is whether there was. Sure, I understand your argument. Then I'll apply the test. Is that what you're urging? Well, certainly what I'm urging on the court to look at with regard to the warrant claim is that these people had an expectation to come back to work because they were going through. And what evidence would they have had between January and May that they could come back to work at some future time? Well, ultimately, the letter from the vice president saying, oh, you weren't terminated. And we are back to a retroactivity argument. That's the way you make it. Because there's no other evidence. There is evidence that they were essentially considered to be laid off, not terminated. They didn't know that. It has been in January through May. The company didn't think that. Well, that's going to tell me that the company apparently changed its position. Well, certainly that isn't clear at all. Exactly. That's when the company came in. The company said in May, hey, we're going to consider this to be a layoff rather than a termination. That's correct. It will indicate to any future employer that you would have been eligible for labor. That's what the letter says. The letter indicates that area. That's correct. That is the evidence on which your claim applies. Indeed. But again, going back to the statutory duty, is there a reasonable expectation for recall? How did they have that expectation? January and May. If I may, do you have that expectation? Our argument is the expectation is when they attempted to go through the grievance procedure, they felt that the termination was improper and that they would be returned to their position. If that was the case, why didn't they complete their grievance procedure? They attempted to, but then they were gone, and then the company disappeared, and that the union stopped doing something as far as one could tell. Can I ask you, what is the burden of bankruptcy? You are to be back in court for both. To obtain essentially what could be gotten under both statutes, 60 days worth of back pay and benefits under the Warrant Act, or the same type of relief under Section 301 of the claim. I'd like to ask you a question. Certainly. For yourself, for the purposes of your argument, that the layoff that occurred during January that wasn't a termination, so you adopted a position that was reasonable, what would be the evidence that that layoff was related to a past layoff that occurred in May? I would assume that the first claim would be because of a past layoff that occurred in May as opposed to the layoff that occurred in January, and that would be what I'm looking for. If one looks, Your Honor, at the letter from the Vice President, she talks about layoffs occurring during that period, both the letter to Mr. Primes and to Ms. Johnson, and that those were the periods where the layoffs were taking place. Well, the question I wanted you to address before you sit down is, what about the statute of limitations, 6-1? They didn't bring their claim until three and a half years, and then the statute says you better bring your claim when the hack would hit 6-1. We're talking about the Warrant. Are you talking about the LMRA, the 301 claim? The 301 claim. The 6-1 statute of limitations is only for hybrid actions. This was not a hybrid action. This was an action under Smith against the employer. That is a four-year statute of limitations. Your Honor, I'm going to distract you, but if you're going to run over your time, I'd like to hear from you. Certainly, Your Honor. May it please the Court, Robert Vogel for a definitive plea. Let me just deal with the case issue real quick. This is clearly a hybrid case. The case that you're signing deals with an employer being sued by not a union member but by some other party. The law has been consistent both in this circuit and the United States Supreme Court for the last 30 years. And in this kind of case, you have to allege, you don't have to necessarily sue the union for failing to represent. They did not do that here. They had two opportunities. In their reply brief, they said, we really don't want to amend that claim. The Court heard it as a matter of law. I want to talk about it one minute, because if they do that, they're out on the statute of limitations. Yes. They're out on the statute of limitations in any event. Judge Whaley, you asked, I think, the appropriate question for purposes of the Warrant Claim. I have not read and have not heard anything until just now that what they're now saying is, well, we had a reasonable expectation of recall. And that is clearly not the case for the following reasons. Number one, they have not alleged or they said that they would allege that where they were initially working and were displaced in January is the same plant that was later the subject of the past layoff in May of 2012. They did not allege or they said they would that it's the same revenue contract that was in place in May of 2012 as opposed to when they lost their jobs in January of 2012. But more importantly, the letter does not say that they were laid off in a lack of work and therefore had a reasonable expectation of recall. They said, you were laid off subject to rehire within Kiolis generally, which means that if at some point they wanted to apply for a job where they were not disqualified by virtue of their criminal conviction or if the period of time consistent with Kiolis' policy elapsed, that they would become eligible again. Then they were eligible for rehire. But that's not saying that they were laid off in January of 2012 for lack of work and then had recall rights within six months thereafter at a different facility under a different revenue contract. So the time is different and the reason is different? Yes, ma'am. And what is the reason? Why did the employer change the notification so that they weren't terminated but were laid off? It's not in the record, Your Honor, but here's the reason. They were not terminated for cost. They were disqualified from working under the new revenue contract because that new revenue customer said, so work under this contract, you can't have a felony conviction. So they were technically eligible for rehire in another position whereby their criminal conviction did not exist. So it was the city that was in the policy that was the criminal conviction? Right. And so the judge clearly, the lower court concluded, the reason why you were let go in January 2012, whether you called it termination or layoff, had no causal connection or nexus with why those other individuals five months later permanently lost their jobs due to loss of work. And so I think even though the Collins case is not right on point, it does rely on that language. They have the alleging line for nothing that they would do that the reason why they lost their jobs was related to or as a consequence of the later plan closure in May of 2012. They allege consistently, and I've asserted here in the briefs, the reason why we lost our jobs was because we had criminal convictions and we failed to pass a criminal background check. And so there's no causal connection between why they were let go in 2012 and why those other people were the subject of a mass layoff in May of 2012 as well. And so I think that's really the issue. And again, they didn't allege it. They didn't assert it in the brief. The first time I heard it was today. And so really they have not indicated in response to the judge's questions what facts would I allege that would in good faith state that we had a reasonable expectation of recall to the facility that was the subject of the mass layoff in May when we were let go in January of 2012. Thank you. Yes. I'm going to use the launchpad. I don't know if you can do that. I don't know if you can see this. I thought you were going to address this last point about the reasonable expectation of a re-hire because I'm having a scene just a couple of days. You want this? I see what you're asking us to do. I see it gets to extrapolate from the letter that they know that they would have had a reasonable expectation of a re-hire in January of 2012. Well, the issue is 12B6, the situation. The court, the district court initially did not dismiss the warrant. It's our position with regards to that we didn't get an opportunity to address this situation. Do I have to be able to appear in good faith that they had that reasonable expectation? And I don't think we saw how they could because they didn't know about the things that did occur. Again, going through the grievance process, they felt that they were terminated improperly. It's that word. And again, the evidence, the indicia of that is in the two letters. It said, no, that didn't happen. Again, with regards to the warrant, the court initially did not dismiss that claim. Why am I going to give you leave to a man? I'm a district judge, so that's something I'm cool with. You had a chance to do that with a man, but you didn't know what you were going to do. According to counsel, that was done to the bank. And there was an access to the privilege to amass these words. Based upon your survival, it sounds like you said, I don't want a man again. I want a man first. But you're not showing what you would have done to justify the amendment. If you're saying, I wonder what's going to last, and how that might justify an amendment, I don't see you. Well, Judge Wiley, you are a district court judge. If you look at the order, the order doesn't say to amend with regard to the warrant claim. It says amend. It says the 301 claim is dismissed with leave to amend that claim. It's not the warrant claim at all. So the warrant claim, the court, I think, misspoke when it indicated, as you have indicated, there was an opportunity to amend, or even the necessity to amend, given what the district court said initially. So that's, it is a forsaken right of the applicant. It was that this would be the opportunity to, we're saying we should have had an opportunity to address that. Well, what would you allege on the warrant claim? That's the problem right there. Well, we would allege, again, what I've got, that they were expecting to win the termination challenge. That, again, the reasons why, given that they were not accurate, and again, I know the court did not issue a judicial notice with regard to the loss of the contract and why Ms. Johnson, Mr. Grimes, hadn't been terminated. But that would go into a new complaint. Thank you, counsel.  I'm going to change over to the chancellor. I'm going to talk to you. I might have misread it. I request that Mr. Grimes, I think, was denied the further amendment because, regarding the committee ruling that you were saying there was one new contract, there were two orders with regard to motions to amend. The first order read this way, your Honor. Please. It was filed December 10, 2015. Okay. And if one looks at page five of that order, it says the plaintiff's warrant and claim is denied without prejudice to raising the issue with a more developed record. And then there's footnote two. If you go back, go to the end of that order, it says in the conclusion, based on the analysis above, the court grants a pardon, denies a pardon. Defender's motion to dismiss the court denies. Defender's motion has to claim his warrant claim without prejudice. And the court grants defender's motion to claim his section 301 claim Okay. Order dated February 5, 2016. She says you had a chance to amend. You refiled a first amendment complaint without making any changes. The problem I see, and I'm looking at page six, which is ADR 09, that basically she's saying the defense couldn't have violated the warrant act because, at the time, your clients could not reasonably have been expected to have experienced an employment loss since they'd already been laid off months before. And that was not what she had said before? Okay. I think we have your argument. Go ahead. Thank you. All right. Thank you. The case's argument is submitted. We'll get you a decision as soon as we can.
judges: Schroeder, Tallman, Whaley